# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| QUINCY DEBROCKER STRICKLAND, : | CIVIL ACTION NO. |
| Banks Cnty. ID # 92027, : | 2:14-CV-00162-RWS-JCF |
|     Plaintiff, : | |
| : | |
| v. : | |
| : | |
| SHERIFF BILLY CARLTON SPEED, : | PRISONER CIVIL ACTION |
| JAIL COMMANDER SCOTT RICE, : | 42 U.S.C. § 1983 |
| KENNETH O'NEAL, M.D., : | |
| ALYSSA ARMENTI, Nurse, : | |
|     Defendants. : | |

## MAGISTRATE JUDGE'S NON-FINAL
## REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Banks County Detention Center ("BCDC" or "Jail"), seeks relief under 42 U.S.C. § 1983. (Doc. 1). Plaintiff has received leave to proceed *in forma pauperis* (Doc. 7), and this matter is ready for an initial screening.

**I.    The Legal Framework**

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a

governmental entity, or from an officer or employee of such an entity, to determine whether the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous when it "has little or no chance of success"—for example, when it appears "from the face of the complaint that the factual allegations are clearly baseless[,] the legal theories are indisputably meritless," or "the defendant's absolute immunity justifies dismissal before service of process." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

## II.   The Complaint And Attachments

Plaintiff sues four Defendants: (1) Billy Carlton Speed, the Banks County Sheriff, (2) Scott Rice, the BCDC Jail Commander, (3) Dr. Kenneth O'Neal, the Jail doctor, and (4) Alyssa Armenti, the Jail nurse. (Doc. 1 at 3). Plaintiff states that he was taken to see Dr. O'Neal and Nurse Armenti on June 9, 2014 for an examination regarding "complications" he had been having with his eyes, and Dr. O'Neal "referred [him] to see an eye care professional before [his] release" to assess "any damage done

2

due to high blood glucose." (*Id.* at 3-4; *see* Doc. 1-1 at 1). Plaintiff alleges that Nurse Armenti told him that Captain Rice would not approve unnecessary treatments, such as eye exams or eyeglasses. (Doc. 1 at 4).

Plaintiff contends that in order to keep medical costs down, Armenti and Rice conspired to change the doctor's referral to a specialist to take place only *after* his release. (*Id.*). He alleges that Rice asked him to negotiate his release rather than file a lawsuit, but Plaintiff declined. (*Id.*). Plaintiff further alleges that Armenti and Rice have intentionally delayed or denied him access to the treatment Dr. O'Neal ordered; Dr. O'Neal has ignored his follow up medical requests; and Sheriff Speed is responsible for all Jail operations and the welfare of Jail inmates. (*Id.*). He alleges pain, suffering and irreparable physical injury to his vison, as well as future risk of further injury, due to Defendants' deliberate indifference to his serious medical needs. (*Id.*). He seeks declaratory relief and compensatory and punitive damages. (*Id.* at 5).

The attachments to Plaintiff's complaint reveal the following. On June 17, 2014, Plaintiff submitted an Inmate Request/Grievance Form stating, "I'm a diabetic inmate [and] at this time am having a few complications with my eyes." (Doc. 1-1 at 1). He noted that Dr. O'Neal had referred him to a specialist to examine his eyes because complications from diabetes is the most common cause of adult-onset

3

blindness.[1] (*Id.*). Captain Rice responded that the medical staff had informed him that Plaintiff would be referred to a specialist only if his "current treatment [to regulate his blood sugar more properly] was deemed unsuccessful." (*Id.*).

On July 2, Plaintiff submitted another grievance form, complaining that he still had not been referred to an eye specialist. (*Id.* at 3). He claimed that his "eyesight [was] terrible," he was "suffering terribly," and he "could go blind." (*Id.*). Captain Rice responded that efforts to monitor and regulate Plaintiff's diabetes continued to be successful and that Dr. O'Neal had advised Plaintiff to follow up with a specialist upon his release. (*Id.*).

On July 3, Plaintiff submitted an Inmate Sick Call Slip – Medical Request, and Nurse Armenti responded, "Dr. O'Neal has already addressed this issue with you and stated [that] vision changes are very common when blood glucose is not well-controlled long-term. He recommends you follow up with an eye doctor <u>upon your release</u> from jail, as stated in your chart." (*Id.* at 4). On July 8, Plaintiff complained that his blood glucose was not being checked daily before breakfast, and he threatened to refuse all medication and food until that changed. (*Id.* at 5). He complained about

---

[1]*See Branham v. Snow*, 392 F.3d 896, 903 (7th Cir. 2004) (noting that "the long term consequences of Type I diabetes . . . include . . . blindness").

4

light hurting his eyes and about headaches. He asked for a second doctor's opinion about his eyes. (*Id.* ("I'm listening to my body and something isn't right.")). After being advised that refusal of medication and nutrition would be considered a suicide attempt and he would be placed on suicide watch, Plaintiff agreed to be compliant. Dr. O'Neal reviewed his medical file and ordered no change in his treatment, which included a daily check of his blood sugar levels. (*Id.*). On July 11, Plaintiff submitted another Inmate Request/Grievance Form, complaining about vision problems, "severe headaches," "extreme emotional & psychological harm," "irreparable harm" to his eyes, and pain and depression resulting from his incurable diabetes. He stated that he needed to see an eye specialist immediately. (*Id.* at 7). On July 23, Plaintiff signed and submitted his § 1983 complaint. (Doc. 1 at 6).

**III.  Discussion**

    **A.  The Law Of Deliberate Indifference To A Serious Medical Need.**

The Eighth Amendment prohibits indifference to a convicted prisoner's serious medical needs so deliberate that it "constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotations omitted). "To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation

5

between the defendant's indifference and the plaintiff's injury." *McDaniels v. Lee*, 405 Fed. Appx. 456, 458 (11th Cir. 2010) (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009)). "A 'serious medical need' is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) (internal quotations omitted). "To satisfy the subjective element of [a] deliberate indifference [claim, a] . . . Plaintiff must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal quotations omitted) (noting that subjective knowledge requires that defendant " 'must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [] must also draw the inference' " (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added in *Bozeman*)); *see also Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010).

"A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to

6

needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) (noting that "prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain"). In determining whether a delay in treatment rises to the level of deliberate indifference, relevant factors include: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

Negligence, even rising to the level of medical malpractice, does not constitute deliberate indifference. *McElligott*, 182 F.3d at 1254; *see also Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999) (noting that it is well-settled that "medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference"), *amended by* 205 F.3d 1264 (11th Cir. 2000); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (noting that "[m]ere negligence in diagnosing or treating a medical condition is an insufficient basis" for a deliberate indifference claim).

Nor does a simple disagreement over a diagnosis or course of treatment constitute deliberate indifference. As long as the medical treatment provided is "minimally adequate," a prisoner's preference for a different treatment does not give

7

rise to a constitutional claim.  *See Harris v. Thigpen*, 941 F.2d 1495, 1504-05 (11th Cir. 1991); *see also Adams*, 61 F.3d at 1547 (concluding that the medical provider's "failure to administer stronger medication" to a prisoner who subsequently died was "a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983"); *Harris v. Leder*, No. 12-12098, 2013 U.S. App. LEXIS 10485, at *13 (11th Cir. May 24, 2013) (" 'Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration.' " (quoting *Thigpen*, 941 F.2d at 1504)).

### B.  Plaintiff Has Stated A Plausible Claim For Relief Against Dr. O'Neal And Nurse Armenti.

"There can be no question that [a] plaintiff's diabetic condition is a serious medical need . . . ."  *Knighten v. Stanton*, CA 12-0717-WS-C, 2014 U.S. Dist. LEXIS 43693, at *58 (S.D. Ala. Feb. 21), *adopted by* 2014 U.S. Dist. LEXIS 42872 (S.D. Ala. Mar. 31, 2014).  The question here, then, is whether Plaintiff has presented a plausible claim that the treatment for diabetes that he has received at the BCDC—including, it appears, medication and the monitoring of his blood glucose levels—constitutes such a blatant disregard of his alleged eye problems and related medical concerns that the failure to send him to an eye specialist exceeds gross negligence and rises to the level

8

of deliberate indifference.  *See Bozeman*, 422 F.3d at 1272; *see also Iqbal*, 556 U.S. at 678.

Because the Court cannot conclude from Plaintiff's complaint that he has not presented at least a plausible claim for relief with respect to his vision and related problems, this matter should be allowed to proceed against the two medical providers, Dr. O'Neal and Nurse Armenti.  It is apparent from Plaintiff's complaint and its attachments, however—after discounting his entirely speculative and otherwise baseless conspiracy claim against Captain Rice—that neither Sheriff Speed nor Captain Rice has made any decision with respect to Plaintiff's health care for which they might be held liable personally in their individual capacities.  Plaintiff's allegations are also insufficient to support a claim against them in their official capacities based on a custom or policy of deliberate indifference to the serious medical needs of BCDC inmates.[2]  (*See generally* Doc. 1-1 (indicating that Dr. O'Neal has

---

[2] *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (noting that "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous"); *Putnam v. Anderson*, No. 1:13-CV-833, 2014 U.S. Dist. LEXIS 36141, at *7-9 (M.D. Ala. Feb. 13) (recommending dismissal of Plaintiff's conspiracy claims because he had "simply not presented any non-conclusory, non-speculative evidence that Defendants reached an agreement to violate his constitutional rights"), *adopted by* 2014 U.S. Dist. LEXIS 35701 (M.D. Ala. Mar. 19, 2014); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (stating that an official-capacity suit against an officer generally is "only another way of pleading an action against an entity of which [the] officer is an agent," and "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law").

declined to refer Plaintiff to an eye specialist while he is undergoing treatment at the BCDC for his diabetes)). These two Defendants are thus due to be dismissed from this action.

## IV. Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's medical deliberate indifference claims against Dr. O'Neal and Nurse Armenti be **ALLOWED TO PROCEED** and that Sheriff Speed and Captain Rice be **DISMISSED** from this action.

Should the District Court adopt this recommendation, the Clerk is **DIRECTED** to refer this matter back to the undersigned for service of process and further proceedings.

**SO RECOMMENDED** this 15th day of September, 2014.

 /s/ *J. CLAY FULLER*
 J. CLAY FULLER
 United States Magistrate Judge